Nash, J. Mrs.
 

 Hollister, by her last will and testament, devises as follows: “ I desire that at my decease, after my just debts are paid, my property may be divided in the following manner — to the Bible Society, Education, Colonization and Home ' Missionary Societies, each five hundred
 
 *202
 
 dollars.” In a subsequent clause is the following bequest, “ as to my slaves, if I could any way effect it, I would emancipate them. I do not. wish to entail slavery upon them. George Physioc has been promised, if I ever sell him, to let him have a chance to buy himself; if this can be done I desire it may by his paying my estate a hundred dollars.” The plaintiffs are the executors of the will, and the bill is filed to obtain from the Court an exposition of the two items above set forth, as to the parties meant in the first clause, and the effect of the last. The American Bible Society, the Trustees of the Board of Education of the Presbyterian Church in the'United States of America, the American Colonization Society, the Trustees of the Board of Missions of the General Assembly of the Presbyterian Church in the United States of America,and the legatees of Mrs. Hollister are made defendants. The answer of the “American Bible Society” avers, that, by that name, the Society was incorporated by the Legislature of the State of Méw
 
 (
 
 York in 1841, but that it is familiarly known by the name of '“the Bible Society” to distinguish it from the numerous.auxiliary Societies, which have been formed in the several States, and different neighborhoods. They aver, that no Bible Society, other than auxiliaries of the American Bible Society, has been incorporated in North Carolina or existed in that State before the death of the Testatrix ; and that no other Bible Society is commonly known under that name, but the American Bible Society. They charge, that the testatrix, by her donation to the Bible Society, meant the American Bible Society. The answer of the Trustees of the Board of Education of the Presbyterian Church in the United States of America states, that they were duly incorporated by that name in tlie State of Pennsylvania; but that, among the members of the Presbyterian Church, of f"whom the testatrix was one, it is c'ommonly known and spoken of, as trie Education Society : and that the object of the testatrix’s bounty was their incorporated Society.—
 
 *203
 
 They aver, that there is no other Education Society subject to the control of the General Assembly of the Presbyterian Church of the United States of America, but the one they represent- The answer of “ the Trustees of the Board of Missions of the General Assembly of the Presbyterian Church in the United States of America” sets forth, that that the Society is incorporated by that name, but that,, among the members of the Presbyterian Church, they are known by the name of the Presbyterian Home Missionary Society and so frequently designated; and that the testatrix was a member of the Presbyterian Church, and she meant her donation 'for their Society.” The answer of “the f American Colonization Society” states, that the Society is an incorporated body under that style and title; but that it is familiarly known as and called the Colonization Society* and is rarely spoken of as “ the American Colonization Society:” That no other Colonization Society is known and spoken of under that name, but the American Colonization Society; and that the latter Society was the object of the testatrix’s bounty. The other answers admit, that the testatrix was a member of the Presbyterian Church,, well acquainted with its various societies; but deny, that there is any emancipation of any of her slaves, and submit to such decree as the Court may make.
 

 The cause is set for hearing on the bill, and answers-:
 

 Where a cause is to be heard in Equity upon the bill and answers, the latter, when responsive-to the*former, are to be taken as true. The answers of the different societies s,et forth their several legitimate titles, or the titles by which they are incorporated, and under which they are at liberty to sue and be sued, to receive and to hold property either r.eal or personal. They admit, that they are not properly described in the will of Mrs. Hollister, but aver* that, in the several legacies given to the respective societies, the soeieti.es. they represent- were, meant. Let it be-
 
 *204
 
 supposed, then, that the testatrix in her donation to the “ Bible' Society,” meant “ The American Bible Society,” in her donation to “ The Education Society,” meant “ The Trustees of the Board of Education of the Presbyterian Church in the United States of America,” that in her donation to “ The Colonization Society,” she meant “ The American Colonization Society,” and in her donation to the “ Home Missionary Society,” she intended “ The Trustees of the Board of Missions of the General Assembly of the Presbyterian Church in the United States of America.” Still the difficulty remains, does enough appear
 
 on the face of the will
 
 to authorize the Court to give'such effect to tho legacies? If permitted to express an individual opinion, I hare no doubt such was the intention of the
 
 testatrix, but
 
 at the same time, 1 admit, I lopk in vain to the will, for evidence of such fact. The principles, which must govern the case, are fully stated and discussed in the cases of
 
 Bridges and Pleasants,
 
 4 Ire. Eq. 30, and
 
 Barnes
 
 v
 
 Simmons,
 
 5 Ire. Eq. 392. The first was upon the will of Stephen Justice, wherein ho devised as follows : “ After my will is complied with, after the above directions, it is my will, that $1000, if there be so much remaining, be applied to foreign missions and to the poor saints.” The answer states, that the testator was a pious and zealous member of the Baptist Church, and “ that by the term, poor saints, the.testator meant his Christian brethren, who might be in needy circumstances, and that the terms, “ home missions and foreign missions,” apply to the efforts of the Baptist Church, to extend the knowledge of Christianity in foreign lands and in our own country. The cause was heard upon bill and answer. The Court say, it is a perfectly well known principle of law, that a Court cannot go out of a will to construe it.
 
 The paper
 
 must tell us the testator’s meaning, or
 
 we can never
 
 find it out. , The Court further held, that, as the doctrine of
 
 cy. pres,
 
 does not have any existence in this country, the Courts can administer a fund upon no such arbi
 
 *205
 
 trary principles. Therefore, say the Court, a bequest to a religious charity inust, like others, be to some definite purpose and to
 
 some body or association of persons having a legal existence,
 
 and with capacity to take. The case of.
 
 Barnes
 
 v
 
 Simmons,
 
 was also heard upon bill and answer. The bill was filed against the defendant as executor of James Simmons, for the conveyance of two negroes, alleged to be devised to complainant, and, through a mistake of the writer of the will, otherwise disposed of. The executor admits the mistake. The Court there reiterate the principle, '• that written instruments, whether deeds or wills, are tó be construed upon their own terms.” “ That, at least there must be epough in them, in respect both to the person to take, and to the subject to pass by the instrument.” If these cases be law, they are decisive of this. Upon what ground do the defendants place their claim to receive these different bequests ? Simply upon the intention of the testatrix, deduced from the alleged fact, that she was a zealous member of the Presbyterian Church, and that Church had societies of the different kinds mentioned in the will. But we look in vain into the will to see any such intention or any foundation for any such intention. In the language of the Court in
 
 Pleasant’s case,
 
 we must find the
 
 intention
 
 in the paper or we can never find it. In the absence of all evidence furnished by the instrument itself, we cannot say the Bible Society means the American Bible Society, or that the Education Society means the Trustees .of the Board of Education of the Presbyterian Church of the United States of America — and so of the other societies mentioned. ,
 

 The case does not present the question of a latent ambiguity. That only arises where several things or persons come completely within the description contained in the will. Here, it is not'pretended, that there are two societies of either kind mentioned in the will. On the contrary,, some of the answers positively deny it. But the attempt
 
 *206
 
 is, to substitute one body of men, who by law are competent to take, for another, which is not competent. We regret the necessity, which compels us to declare, that the several legacies, set forth in the first clause of the will, are void for uncei’tainty in the description of the persons who are to take.
 

 The executors pray the advice of the Court, as to the slaves of the testatrix, particularly as to George Physioc. We have no advice to give — all we can do is to give'a construction to the clause, relative to the slaves of the testatrix. She no where leaves them their freedom, or directs the executors to emancipate them. She says, if she could, she would emancipate, but she does not do it. As to> George, so far from giving him his freedom, she expressly directs a sale, and only permits him to purchase himself at a particular price.
 

 Per Curiam. Declared accordingly.